So we'll start with Wellons v. Eagle Valley, 17-1309. Good morning, may it please the court. I'm Shannon Stephenson on behalf of Eagle Valley and Evergreen. The district court in this case abused its discretion by refusing to bifurcate the trial based on reasons that had nothing to do with the factors relevant to bifurcation. And all of those factors supported bifurcation in this case by the district court's own admission. I want to address in my initial remarks here the court's rationale and why it was an abuse of discretion, how the appropriate factors supported bifurcation, and whether Eagle Valley was prejudiced by this decision. I intend to reserve time for rebuttal to address issues on Wellons' cross-appeal. Well, before doing that, I have a hard time seeing why you didn't invite error on that issue. There was a colloquy with the court in which the court specifically engaged you on the question of whether there would be bifurcation. And yes, there's no doubt that you also wanted bifurcation, you wanted a continuance, but at the end of the day it seemed pretty clear to me that you strategically decided to take the continuance and forego bifurcation. And then when the court said – when you inquired, okay, does this mean that I also get bifurcation? The court says no, and you said thank you, Your Honor. That looks like invited error to me. Certainly, Your Honor. Invited error occurs when the court – when the party urges the court to take a certain action. So in this case that would be if Eagle Valley had urged the court to not bifurcate the case. And I think the record 100 percent shows that Eagle Valley always wanted to have bifurcation. And let me go – Well, let me switch it a different way. Use the word abandonment. They both end up in the same place. If you knew an issue was live, you knew it was on the table, and you had an opportunity to claim it, and you didn't claim it, you abandon it. So whether you call it invited error or you call it abandonment, they equal the same thing, which is waiver. Right. And, Your Honor, let me go specifically to the words that Eagle Valley's counsel used when addressing the court's question about continuance and bifurcation because I absolutely don't think that he abandoned the position. The first thing he says in responding to the court's inquiry is we would agree with the bifurcation approach, the back-to-back bifurcation, provided we can get the continuance. So he's saying, okay, we'd like the continuance and we're good with the back-to-back, but we're not abandoning our request for bifurcation. That was some time before what Judge Holmes was talking about, though, wasn't it? I mean there was quite a bit of conversation went on after that. Well, it was immediately before when they're having the conversation about continuance and bifurcation. It's probably two or three pages before in the transcript. But then when he concludes his remarks, he says it again. He says, so we would accept the idea of having the same jury decide both the fraudulent transfer and the defect claims. Fraudulent transfer, obviously subsequent to the defect claims, but we really need the extra time. So, again, he's not saying we don't want a bifurcation. He's saying we're good with the back-to-back jury as long as we can get the continuance, too. And so I don't read that to be in any respect an abandonment of the bifurcation position. I have a problem with this. The judge perhaps misunderstood your predecessor's position on this. He stated what Judge Jackson stated what he understood, and there was no correction. Let me read the very last part of the colloquy here. Mr. Green, Your Honor, may I ask one question for clarification? The court, yes, but I've ruled. Mr. Green, yes. As to the bifurcation, is it your ruling that they would be taken up with the same jury, but except for the fraudulent transfer after the other claims, or are they all being tried together? The court, it will be all together. You said earlier you'd be okay with that if you got your continuance. Well, you got your continuance. Mr. Green, thank you, Your Honor. The court, so the Wellands people got what they wanted, and you got what you wanted, but they didn't get all they wanted, and you didn't get all you wanted. Now, isn't there an obligation on the part of counsel to correct a misunderstanding by the court and say, no, that's not what we agreed to? No, Your Honor, but I also think when we— You don't think so? Well, when you read the court's statement all together, right, which he says, you said you were okay with that, and then he says, look, I gave Wellands something that they wanted and I gave you something that you wanted. So I think when you hear the court's position all together, what they're hearing is the court said, I'm giving them something and giving you something. It's not just that you said you weren't interested in it. And I agree. Look, it would have been great if he'd said, wait, wait, wait, Judge, that's not what I said. But I think when you read the court's comments all in context, and they've been discussing this issue for so long, it's not incumbent once the court has definitively ruled for them to come back and continue to try to press the issue. The judge had clearly made up his mind about what he was doing. He was going to give one thing to Wellands and one thing to Eagle Valley. And I want to make a really important point about that, which is that's not a legitimate reason to deny bifurcation. I mean, clearly what the court was trying to do here was force some kind of compromise. And that's a basis for which a good lawyer would object. And there was no objection made. And that's the point. You could still have preserved your objection no matter what you got. It seemed to me by reading that passage that Judge Hartz just read, a calculated strategic decision was made to abandon. So you can not call it an invited error if you don't want, but abandon that claim for bifurcation in order to get what you wanted. Because the fear would be that if you said no, Your Honor, I want to continue to have bifurcation, you wouldn't get the continuance. Well, you could have at least objected and said I want to preserve my objection to not getting bifurcation. That wasn't done. Well, Your Honor, let me put just again to put this in context. Eagle Valley had been asking for bifurcation from the very beginning of this case, from the earliest pretrial conference. They filed the motion for bifurcation. They brought it up again. They had a huge, long discussion at this hearing. And the court throughout the entire time was saying, I agree with you. I'm inclined to bifurcate. I think this evidence is prejudicial, giving every indication that he was going to bifurcate. He then puts forward this specific proposal at this hearing where he says, how about this? We're going to do a back-to-back bifurcation. And Eagle Valley is embracing that, saying, yes, that seems like a good idea. And when you read through this colloquy with both Eagle Valley and with Wellens, Eagle Valley embraces the back-to-back bifurcation. And even Wellens doesn't object to it. They say, OK, we'll consider that. That might resolve our issues. And we need to ask our client. And then there's really sort of this out-of-nowhere, the court all of a sudden saying bifurcation is denied. And Eagle Valley says, well, why? And I agree with you. Again, I think in the context, in the heat of the moment, the judge is saying, well, I've heard everything you had to say. And this is the compromise I'm deciding on. Let me, one, I think we try to put ourselves in the place of the district court and see what the district court would think. That'll be our challenge. If I were the district judge in that circumstance, I'd sure expect something. But let me ask, there's a second component to your bifurcation, and that is your claim of prejudice. And I didn't see in the briefs, in your briefs, one piece of evidence that you claimed was admitted with respect to the second of the two bifurcated claims that you wanted. You didn't point to one piece of evidence that came in that prejudiced you with respect to the contract breach claim. And without your doing that, I don't see how we can possibly resolve the issue of prejudice in your favor. So, Your Honor, I think the challenge with prejudice here is that it's so overwhelming. Everything that came in about the fraudulent transfer of claims was prejudicial to Eagle Valley. And let me put that in context. You have to give us at least one thing. Okay. The purpose, you know, we had two key witnesses on our breach of contract claims, Dean Rostrom and Kendrick Wade, right? Their credibility was very important. The entire gist of the fraudulent transfer claims was to show that these two men had been making fraudulent transfers in an attempt to defraud Welland's through their actions. There was 70 pages of testimony from an expert witness, from Welland's expert witness, strictly devoted to the fraudulent transfer claims. Both of these witnesses were cross-examined about those issues. And so, I mean, there's a huge… So tell me one piece of evidence because your brief didn't. One piece of evidence that was inadmissible with respect to the breach of contract claim that came in only because of the fraudulent transfer claim and prejudiced you. Sure. I would say the entire testimony of the expert, Linton Hudson, his entire testimony was designed to draw lines between all these companies and to analyze each of these individual transfers and whether they were legitimate or not. None of that would have come in in a trial on the breach of contract claims. Why didn't you say that so they could respond? I thought they had some sort of argument that most of this, maybe they say even all of it, would have been relevant somehow to the contract breach claim or damages or something along those lines. And you didn't give us any help in that. And I'm not going to say that's waiver, but it sure sounds like abandonment. Well, Your Honor, and recall that we didn't file a motion in Lemony 2 to exclude all that evidence. But the fact of the matter is once the fraudulent transfer claims were in the case, that evidence should have come in. It was appropriate then. But again, everything related to all of these details about all of these transfers, all of the testimony of that witness, of that expert, none of that would have come in. The cross-examination of Mr. Rostrom and Mr. Waite about the legitimacy or the reason for those transfers, none of that would have come in. On the question of prejudice, but how does it cut that you prevailed on the fraudulent transfer claim, right? So, I mean, what does that suggest to you about whether the jury accepted that evidence that was introduced anyway? We don't know, Your Honor. Fraudulent transfer had a whole number of elements. We don't know why the jury ruled for us on that issue. But the point was the credibility of our two witnesses on the breach of contract claim was critical. There were hotly disputed facts on those claims. And when you have half a trial devoted to evidence about fraudulent transfers and whether these folks engaged in fraudulent transfers, that is specifically and by Welland's own admission designed to undermine their credibility, you have to believe that there could be prejudice in the way the jury evaluated their credibility in resolving the breach of contract claims. In the Dixon case, it says, look, the inevitable effect of the introduction of prejudicial evidence is the denial of a fair trial. And all of this evidence about these fraudulent transfers, there were exhibits with diagrams and all this, none of that would have come in had the case been appropriately bifurcated. Was there a contemporaneous objection to these exhibits and testimony about the fraudulent conveyance? There wasn't, Your Honor, but it wouldn't have been appropriate to object once the fraudulent transfer claims were in the case. The evidence was appropriate and relevant to those claims. But what we're saying is those claims shouldn't have been tried. Because, I mean, all this circles back to your bifurcation argument. Right, right. It was bifurcation. Yeah, I mean, the whole – so whether it was – should have been talking about fraudulent transfer or not, it all comes back. If you lose on the bifurcation issue, you're done. That's right. Okay. And with the court's permission, I'd like to reserve the remaining time. Okay. May it please the court. My name is Raffy Melkonian for Wellands. My plan is to address Eagle Valley's appeal, and then I'm going to turn to Mr. Cathy, my partner, to address our cross appeal, if that is okay with your honors. Let me directly address some of the things my friend said with respect to Eagle Valley's appeal. First, with respect to forfeiture, I have one other aspect of forfeiture I'd like to urge that I think could resolve this case, which is that Eagle Valley never asked for the kind of forfeiture they're complaining about today. If you look at their motion to bifurcate – excuse me, the type of bifurcation that they're asking for. If you look at their motion to bifurcate, that's at 379 of the appendix, what they asked for was one trial in front of one jury, then to let Wellands go try to execute for years or months or however long it takes, and then have a second trial in front of a second jury. They never asked for the kind of bifurcation that Judge Jackson was contemplating in all the pre-trial colloquies. So I think it's a fundamental basis of preservation that you have to ask for the remedy that you're now complaining about in front of the court of appeals. Well, if they embrace the remedy that Judge Jackson puts forward, then I mean I think that's a distinction without a difference. I mean if he says, well, what about this? And they say, all right, that sounds pretty good to me. I mean so what if they didn't ask initially? I don't – it seems to me that's formalism. Fair enough, Your Honor, but I think they nonetheless forfeited or abandoned that argument when Mr. Green said, as Your Honor said, that he was okay with what the judge was doing and didn't object to tell the judge that he had a problem. With respect to prejudice, let me – Do you agree that the judge's decision was based on his understanding whether correct or not on this deal and that there wasn't – in the record there's not evidence that he really exercised his discretion in considering everything and deciding not to bifurcate? No, I don't agree with that, Your Honor. I think where you look to see Judge Jackson's rationale for his decision is in the post-trial order denying their motion for a new trial. Okay, now that's post-talk. He knew everybody was unhappy with the idea at that time, didn't he? He did, Your Honor, but I think that's the most definitive statement of Judge Jackson's views on this matter. All the others – Well, I mean I can do that too. I can make a decision without any reasoning and then when it's challenged I can come drum up a lot of reasons why it was a good idea. Certainly that's true, Your Honor, but I think – Let me help you. Tell me if you've got anything before the case was tried that shows that he exercised his discretion in making the decision not to bifurcate. Absolutely, Your Honor. I think the fact that, first of all, Judge Jackson was thinking about this for months. If you look at the two pretrial colloquies about bifurcation that there are, he's contemplating how to narrow the claims, how to deal with this problem. He's posing hypotheticals to both sides to try to push them, and I think he's thinking very hard about it. The fact that Dave Cherry picked a couple of comments he made during one of these extensive discussions I don't think means that he didn't exercise his discretion. I mean don't you think that the – if we dug into the record on this about what he was talking – what he said on the record before this pretrial conference ever occurred, I mean don't you think he was leaning toward bifurcation? I mean the record transcripts I've seen suggest that he was leaning in favor of bifurcation. So I mean how's that support that he exercised his discretion at the last minute to not bifurcate? I think he was leaning more towards bifurcation in the first motion – the first hearing before Eagle Valley filed their motion to bifurcate. And then as he was thinking through it, I think he started to understand what our point was about why we needed both the fraudulent transfer claims and our breach of contract claims in the same case. And also I think he understood that most of this evidence would have come through anyway, as Judge Hartz was saying a few minutes ago, because one of our theories of why there was a breach of contract on behalf of Eagle Valley was that they were happy with the plant until they got the government money. Then they had a sudden change of attitude towards us after they got the government funding. And when they realized their fuel prices were too high, they were in trouble, they started moving their money around. And so I think Judge Jackson understood that that evidence was going to come in anyway. And as he went through the colloquy with the counsel, he came to that decision. Do you have a place in the record that you could direct us where we could look and from reading it we would determine that Judge Jackson was leaning your way, that he was deciding not to bifurcate? I don't think I can point to a specific sentence where he said, you know, I was initially inclined to bifurcate, but now because of this and this I'm not inclined to bifurcate. I would point, Your Honor, to his opinion after trial. Was there any colloquy about the possibility that the evidence would come in anyway, even if the fraudulent conveyance? There certainly is colloquy about that from our side, yes, Your Honor. Did he express any view on that? Nothing definitive, but he listened to us, he considered that when he was discussing it. I think he understood that very well. We said very specifically why we wanted this evidence in, nonetheless. Just a couple other points on prejudice. Judge Holmes said we lost the fraudulent transfer claims anyway, and that's correct. But another point is that we defeated GQ. GQ was the subrogated insurance carrier. And our friends say, well, there was all this tremendous prejudice with respect to Eagle Valley. If that's true, we should have beaten Eagle Valley but lost to GQ. But we prevailed against both. And I think that's sort of a natural experiment in the middle of this trial. And it shows that there was no prejudice with respect to Eagle Valley. They can't point to a single page anywhere in the trial transcript where they stood up and they said, Your Honor, there's prejudice here. And this is exactly the prejudice we were talking about when we filed our motion to bifurcate. I know that if you were going to make this argument of bifurcation on appeal, you'd be jumping on a down every time you saw this problem happen. To tell the trial judge, Your Honor, this is exactly what we warned you about. And there is not a page in the trial record where they can point to that. So I think that's very significant. Finally, let me just quickly address their actual prejudice argument. If you cut through the rhetoric, what is their prejudice argument in the reply brief? And their argument is essentially there must have been prejudice because we lost. They forfeited evidentiary sufficiency. They didn't file a Rule 50b motion at the end of trial. And now they're trying to work that back into this case through the backdoor of bifurcation. I don't think that's proper. I think at the threshold you can reject that argument. But even so, I think one thing you'll take away from this record is that there was evidence going in all directions. The jury could have come to any, I think, conclusion in our favor, against us, in favor of GQ. We think the evidence was heavily in our favor. But that doesn't mean we don't accept that there was evidence going in all directions. And I don't think their argument that the evidence was so overwhelming that the only reason Wellens won was because of prejudice makes any sense. Did your colleague argue for a while? That's what I was planning on doing, Your Honor. I think I'll urge you to affirm the judgment below and let Mr. Cathy address our cross-appeal. Thank you. May it please the Court. Your Honor, Wellens' cross-appeal addresses three issues. First, the grant of summary judgment on our mechanics lien foreclosure claim. Why do you care about the mechanics lien? You got the judgment. Is it a matter of priority and collection? Exactly, Your Honor. I was going to rest on the briefs on the prejudgment interest issue because all of this is not particularly beneficial at the end of the day if we're not allowed to collect on the judgment. And so that's why the two priorities in addressing the court today would be the mechanics lien and the charging order, which at least provide us with some ability to collect on the judgment. What difference does it make whether you have a mechanics lien? I was just curious about that. It's the most direct way to allow us to collect on the actual physical assets that we know exist. Obviously, it would be the plant and the land that they sit on, Your Honor, as opposed to collecting on the parent companies that hold the assets. So one of the parties to the judgment was Evergreen, which holds the plant through two subsidiaries, Your Honor. Do we have to disagree with the Everett case for you to win on the affidavit issue? The facts of Everett are a little bit fuzzy, but I think the court of appeals in its subsequent case in Shershock made clear that Everett involves a dual problem. There, the lien claimant didn't personally serve notice of intent to file a lien statement or file the affidavit. Yeah, but the court mentioned that it was irrelevant whether the party that owed on the lien knew about the lien. There was actual knowledge, and the court said that's irrelevant. And so I think what the court was saying was you need to, in order to comply with the statute, you need to personally serve notice of intent to file a lien statement. And so you can't acquire knowledge through some constructive means or through anything other than personal service. And as I understand the arguments that were presented in Everett was the way that the lien claimant was asserting that the debtor had knowledge was through their intervention in the lawsuit. And that's at the very first sentence of the court's opinion was where they talk about the intervention of the parties in the lawsuit. And so I don't think Everett really has any application to this case for the reasons that it's undisputed that we properly serve notice of intent to file a lien statement. You didn't file an affidavit, though, right? Correct. And that's required. It is required, but the remedy, Your Honor, is not forfeiture of the lien. I think the statute makes that clear on its face. The first sentence says in order to preserve the lien claim, there must be a notice of intent to file a lien statement served upon the owner. So the only thing the legislature is requiring in order to preserve the lien is the notice of intent. It does subsequently require an affidavit, but that's not what the legislature is requiring strict compliance with in order to preserve the lien. I think the affidavit serves an evidentiary function. When you look at cases like United Floor v. Eigle and Sixth Escort v. Martinez, basically it creates an evidentiary presumption once the affidavit is filed. But the absence of an affidavit doesn't preclude proof that service actually occurred. And in this case, it's undisputed that service of notice of intent was actually given by Wellens. Let me ask you about the charging lien. Chip? I don't quite understand your view of how that works. It seems to me the charging lien, as I understand it, is to tell the limited partnership, don't distribute the dividends or whatever distributions will be made to a limited partner. Don't distribute it to the limited partner. Distribute it to me, the creditor of the limited partner. How can you require the limited partnership to do that without getting an order against the limited partner? It seems to me it's like garnishment, where if you want to collect the employee's wages, you get an order against the employer saying 40 percent or whatever of the wage needs to go to the spouse for child support. You seem to be arguing you can get a charging lien that's of use to you without having an order against the limited partnership itself. Can you explain that? Two points, Your Honor. First, I think there are two issues that are somewhat related, but only one of them is before the court. So the first issue is whether we can obtain a charging lien against the debtor's interest. And so I think that's the perspective the court needs to look at it, not so much from the LLC's perspective. What does that mean, to get a charging lien against the debtor's interest? You think that's something you get against the debtor. But it seems to me you have to get that lien against the limited partnership. And the charging order statutes vary across the country. And as a general matter, I think Your Honor's understanding of a charging order is correct. It basically directs payment that would have went to the judgment debtor and sends it to the judgment creditor. But in certain states, including Colorado specifically, there is the option to foreclose on the judgment debtor's interest in the LLC. And that's what's really of interest. Where do you get that authority? In the limited partnership provisions of the statute? Correct. The charging order, the statute specifically contemplates foreclosure of the member's interest. And so that's why you would look to the members. Okay, foreclosure of the interest. Yes, Your Honor. Wait, wait. The creditor will substitute in place of the debtor as the owner of the LLC. And then how do you get authority to require the limited partnership to pay that? And that would be the second step, Your Honor. There likely would have to be some domestication of the charging order in a court of competent jurisdiction. You agree that the limited partnerships were not subject to Colorado jurisdiction? I do not. And that was the point I was about to make. They contend that they didn't have, the district court didn't have jurisdiction over them. We heavily dispute that. And the easiest way to say this… But your argument, as I understand it, is that we have jurisdiction over them because we have Colorado jurisdiction over both the parent and the subsidiary. Correct. And the only business… Well, how does that give you jurisdiction of the intermediate entity? The only business activities those two entities in the middle conduct are holding the property, the Eagle Valley plant, Your Honor. And so their only business activity is obviously centered in Gibson, Colorado, where the plant is located. And so to the extent that there's any business activity of those two, it's in Colorado. Going to the first step, though, I don't understand how you would be able to get a charging document as it relates to the debtor's interest when, in fact, the LLCs are not incorporated in Colorado. It seems the statute contemplates that the interest would flow to an LLC that was incorporated in Colorado. I see my time has lapsed. Do you mind if I answer? We'll tell you when your time's up. Okay. Thank you, Your Honor. But don't take long in answering. Yes. Two points. First, the definition of membership or of LLC that the district court relied upon is not exclusive. When you look at the introductory sections of the statute, it says, quote, unless the context otherwise indicates. So the statute, the legislature clearly contemplates that these are not all encompassing definitions. But my second point and the stronger one is that the focus should be on the definition of member. And so they define a member as a person who has ownership in an LLC with the rights and obligations specified under the section. And so that last provision is important because Article 80 dealing with limited liability companies incorporates Section 805 of Article 90, which in turn provides that foreign entities are subject to the same duties, restrictions, penalties, and liabilities upon a functionally equivalent domestic entity. So I think the LLC statute clearly, by incorporation of those provisions from Article 90, puts foreign and domestic LLCs on equal footing with one another, Your Honor. No. Tell me what the statutory language is that says you can get a lien on the debtor's interest in the LLC. I don't recall seeing that. I don't recall that being referenced in the brief. I obviously overlooked it. Yes, Your Honor. I want to make sure I get it correctly. 7-80, Section 703 of the Colorado Revised Statutes. I'm sorry. 7-80-703. And that provision is several. What's the language that says? It says the membership interest charge may be redeemed at any time before foreclosure. So it contemplates foreclosure of the LLC member's interest by the debtor. And 7-80-1027 defines a limited liability company as a company formed under this article. Formed under this article would suggest to me a limited liability company that was formed under Colorado law. And so if that's the case, then you have a member as a person with an ownership interest in a limited liability company. Then a limited liability company is a company that's formed under Colorado law, which would imply that this situation is not one where you have a cognizable member's interest. Your Honor, certainly I do think there is a conflict, though, when you read the full definition of member with the provisions of the statute that also incorporate the restrictions on foreign entities. And so that's why I would specifically, certainly it does reference a LLC, but it also continues with the rights and obligations specified under this article. This article does apply to foreign entities in certain respects. And so I think the intent when you read all of the sections together and not specifically just the LLC. Do you have a case that says that? I do not have one direct to that point. There are several cases from other jurisdictions, which we cite in page six. Thank you. Thank you. I'm going to take one more stab at the bifurcation point here, because at the end of the day, what you can see is that Judge Jackson did not make a single finding relative to the factors that are important to bifurcation. He attempted to force a compromise, but that is not a rationale for denying bifurcation. Eagle Valley had two requests pending, one for continuance, one for bifurcation. Those each have particular legal factors that govern whether they should be granted or not. There was nothing logistical that prevented the court from granting both of them, and Eagle Valley was entitled to a reasoned decision that applied the actual factors relevant to bifurcation, not just an attempt to split the baby, which would not be a valid reason to deny bifurcation. And for that reason, we think that the judge abused his discretion. And to your point, Judge Carson, there isn't one statement in the record anywhere, despite all of the conversation about this, that would show that Judge Jackson had any support for the notion that bifurcation should be denied. Every single finding that he makes suggests that he thinks bifurcation is appropriate. Was he limiting his consideration of bifurcation, though, to the type of bifurcation you argued for, which was, apparently, let's see if you get a judgment on the contract claim. If so, try to collect. If you can't, then go for a claim of fraudulent transfer. So, Your Honor, when Eagle Valley actually filed its motion to bifurcate, it was very nonspecific about the type of bifurcation. And clearly, as you pointed out, when the judge proposed back-to-back, Eagle Valley entirely embraced that proposal as a legitimate way to go. And so I do think a lot of the judge's findings were specific on back-to-back, but that was clearly a proposal that Eagle Valley embraced. So with respect to the mechanics lien, Judge Carson, you asked would that require that you disagree with Everett. Absolutely, it would. Everett is directly on point in this case. It's been good law for 35 years. It's the exact same statutory requirement at issue. It's the exact same subsection of the statute. We know that there are aspects of the Colorado Lien Statute that are required to be strictly complied with. And those relate to actually perfecting your lien. This particular requirement is in subsection 3, which begins, in order to perfect your lien. So it is a requirement that is right in that subsection of the type of requirements that get strictly construed. And it always has been. And again, you would have to disagree with Everett in order to find in Welland's favor on this claim. And then finally, with respect to the charging order, I do want to emphasize the mootness point here. We've attached, and Welland's has obtained, a charging order on these precise interests from a Utah court. But they say their remedies under Utah law are not as good as under Colorado law. So in the first instance, I think that that is not a basis for avoiding mootness. Why? Because I think they're pointing to very hypothetical, minor, nuanced differences. And quite frankly, their argument is based on an article interpreting a dicta from a United States bankruptcy court about what remedies might be available in Colorado. So you're conceding to them that they'll get any remedy in Utah that they would have wanted in Colorado? I can't make that concession. Well, then why should they make the concession? Well, let me point you, though, to the Utah statute. And if you compare the Utah statute to the Colorado statute, and this is the Utah Section 48-3A-5032B, it reads exactly the same as the Colorado statute. Both authorize the courts to make the necessary orders to affect the charging interest. Now, if you're talking about some hypothetical other remedies down the road that they might be seeking or some slightly different ways these might be implemented, I don't think that in and of itself is a way to avoid mootness, and in particular the doctrine of prudential mootness, which is discussed in the Southern Utah Wilderness Alliance case that we've cited to the court. Am I wrong that a member's interest that is considered under this Colorado statute must be a member's interest of an LLC that was formed as part of this statute? No, you're exactly right, Your Honor, and that's the argument that we've made. We think the statute, when you look at the definitions, it's completely clear that it only applies to Colorado LLCs, and they can't reach beyond that. And that really is the bottom line on the charging order argument. The statute just does not support it. And the fact that they were able to get the charging order in Utah means that there's really no prejudice in that interpretation. I see my time has expired. Well, opposing counsel took an extra few minutes, so if you need another minute and a half to respond to anything further, you're welcome to, but if you don't, that's fine. Can I ask you a question? Yes. Is lurking in the background of your argument this notion that the state of Utah and companies organized under the laws of the state of Utah have an interest in controlling who can be members of LLCs and who can own interest in LLCs? Just sort of the way I was thinking through this is you organize a company under the laws of the state of Utah. It would not seem right that a Colorado court could say, okay, we're going to take this interest in a Utah company and give it to somebody else based on our law. When one of the purposes of incorporating or organizing under the laws of Utah is you're trying to get the protections of that law. That's probably not very clear. Do you get the gist of what I'm saying? I do understand what you're saying, but I think, quite frankly, the states vary, and some allow them to do what Wellens wants to do here and some don't. And the way the Colorado statute is written, it doesn't allow for it. And, again, there's really no prejudice to them here. They were able to go get the exact same charging order from Utah. Let me pursue that, because I'm not sure I agree. That's certainly not in the specific chapter. I'm not sure what the divisions are on LLCs, but they have a foreign entity statute that was cited, 790.805. And subsection 2 of that says, A foreign entity that has authority to transact business or conduct activities in this state has the same rights and privileges as, but no greater rights or privileges than, and, except as otherwise provided by this title, is subject to the same duties, restrictions, penalties, and liabilities imposed upon a functionally equivalent domestic entity. Is that not broad enough to include LLCs? I think the statutory interpretation principle here, Your Honor, is that that is a very broad statement. And when you go to the actual specific statute that authorizes this type of charging order, and you look at the defined terms that are used in it, that's going to control over that broad statement. I would think you got it backwards there. You have all these different entities that have their own laws, and they say whatever rights. If you're doing business in Colorado, it's not just, if they weren't doing business in Colorado, no application of this section. But we're not going to define LLC for every other state. But if an LLC is doing business in Colorado, the essential rights, duties, et cetera, of the foreign LLC, I'm sorry, with respect to domestic LLCs, will apply to that LLC doing business in Colorado. But again, Your Honor. Isn't that, wasn't that the whole purpose of this? I think when you look at the specific statute that authorizes the charging order, which is, in my view, more specific than the provision that you're citing, although I certainly understand you can make arguments either way, and you look at what that applies to, it does not apply to these foreign entities. It's only more specific because of the terms used in that section when it says LLC. And it's a totally different section that defines LLC as one organized under Colorado law. So that would mean that 790.8052 doesn't apply to LLCs because that's the definition for every provision in the LLC chapter. Is that your position then, that 790.8052 does not apply to LLCs, period? Your Honor, I'm not quite sure that I follow that question. What I can say is other statutes, other states have schemes just like Colorado, and they've interpreted it just the way that we're arguing here, which is based on the definitions of the LLC and the member that are provided and whether those apply to foreign entities. And again, I just have to come back to the mootness point. They've obtained this order. You say other states that have provisions like 790.8052 have interpreted that to exclude LLCs, or you're saying other states that have the identical LLC provisions as Colorado have interpreted not to apply to foreign LLCs? Your Honor, I believe that their entire schemes are the same as Colorado's, but I would have to double check that to be sure. By the way, if you want to send a 28-J letter, because one of their problems is they didn't cite to 790.805 until their reply brief, so you haven't had an opportunity to address that in your briefing. So if you want to submit a 28-J letter, that's appropriate. Thank you, Your Honor. We'll do that. Thank you, counsel. Case is submitted. Counsel are excused.